UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:25CR0283 RWS JMB |
| | ) | |
| DAMEON G. CHRISTIAN, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Dameon Christian ("Christian"), represented by defense

counsel Julie Clark, and the United States of America (hereinafter "United States" or

"Government"), represented by the Office of the United States Attorney for the Eastern District

of Missouri. This agreement does not, and is not intended to, bind any governmental office or

agency other than the United States Attorney for the Eastern District of Missouri. The Court is

neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A) and (B), Federal Rules of Criminal Procedure, in exchange

for the defendant's voluntary plea of guilty to all 3 counts in the Superseding Indictment:

A.      The government agrees to request a sentence of no more than 60 months

imprisonment. This is upward variance from the guideline range. The parties also agree that the

defendant may request a sentence below the U.S. Sentencing Guideline range. The guideline

1

range (combination of Total Offense Level and Criminal History Category) is ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request; and

B.    The United States agrees that no further federal prosecution will be brought in this District relative to the defendant's conduct from May 11, 2025 through the date of the plea relative to the indictment, of which the Government is aware at this time.

C.    The Court is neither a party nor bound by this agreement.

D.    The Defendant agrees to forfeit all property seized by law enforcement including his cell phones, any other electronic devices and ammunition.

### 3. ELEMENTS:

As to Counts I, and II, of the Superseding Indictment, the defendant admits to knowingly violating Title 18, United States Code, Section 875(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

A. The defendant knowingly sent a message in interstate commerce;

B. Containing a true threat to injure the person of another;

C. The defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

As to Count III of the Superseding Indictment, the defendant admits to knowingly violating Title 18, United States Code, Section 924(b) and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

2

A.    The defendant traveled across state lines;

B.    while transporting a firearm or ammunition; and

C.    with the intent to commit a felony or with knowledge or reasonable cause to believe that a felony will be committed with said firearm or ammunition.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Summary:

In May of 2025, the Defendant (Dameon Christian) began posting public threats on his Facebook page. The threats were to kill victims "D.K." and "L.S." Parties agree that the government could prove that law enforcement investigation showed that the defendant also fired into a church in North St. Louis City and into a home in East St. Louis, Illinois. The shell casing from the two shootings match -- indicating that the defendant crossed from Missouri to Illinois with a firearm and ammunition with the intent of committing a felony shooting.

Detailed Facts:

Victim "D.K."

On May 13, 2025, Meta Platforms, Inc. provided business records relating to Facebook account identifier 100000183245736 because threats were being posted to the Facebook page by the subscriber. The threats were to commit violence against other persons. Further records identified the subscriber for that account as the Defendant, Dameon Christian. Additionally, the records stated that on May 12, 2025, at approximately 3:00 PM, the defendant posted a status update threatening victim "D.K." which stated the following:

3

"Dxxxxx Cxxxx PXXXXXX KXXXX IM LOOKING 4 U ACTIVELY IM KILLING U TODAY THANKS TO THE ILLINOIS-STATE POLICE DEPARTMENT I HAVE FOUGHT MY WHOLE LIFE MY MYSELF ITS FINISHED FOR U NIGGA @highlight"

The aforementioned Facebook records also listed the last location of the mobile phone associated with the account at 38.593864486696, -90.230021776271 at approximately 6:50 PM CST on May 12, 2025, which resolved to approximately 2801 Cherokee St, St. Louis, Missouri 63118. Further investigation revealed that the Defendant made additional status updates and live videos throughout May 12, 2025, and May 13, 2025, until the Defendant's Facebook account was taken down. Examples of those threats and images/videos posted by the Defendant are listed below:

a.  At approximately 5:36 PM on May 12, 2025 – "IM NOT AFRIAD OF DEATH NOR JAIL"

b.  At approximately 5:59 PM on May 12, 2025, the defendant posted the following image of a black Smith & Wesson pistol in his waist band with the caption "THING I CARE!!! Babe I'm FEELING SO GOOD TODAY!!! Lol How U Doing? IM AMAZING!!! IN OTHER NEWS IT'S A MAN HUNT!!!"

4



**Dameon Christian**
23h · 🌐

    c.    At approximately 6:36 PM on May 12, 2025 – "WHEN IM DONE A
MAXI PAD AINT GONE BE ABLE TO SATURATE THE BLOOD
THAT IM ABOUT TO BLEED"

    d.    At approximately 9:36 AM on May 13, 2025 – "I'M NOT OK & ITS OK
BUT IM STILL ON A MISSION!!!! Thanks for Loving Me and 4 The
Many Memories!!! I SAID WHAT I SAID THE POLICE DIDNT GIVE
A DAMN SO WHY SHOULD I…. DXXXXXX CXXXXX PXXXXXX
KXXXXX IM ON YOUR ASS BOI!!! IM GETTING MY PAYBACK
SINCE NOONE SEEMS TO UNDERSTAND HOW U FUCKED MY
ENTIRE LIFE UP!!! IM A SHOW U!!! @highlight THIS NOT A
THREAT IT'S A PROMISE!!! I GOT TWELVE INTENTIONAL
ROUNDS IM A LOAD OFF IN YOUR ASS LITERALLY LET U

5

REALLY SEE WHAT IT FEELS LIKE!!! I HATE U I HATE U I HATE U"

e.  At approximately 9:36 AM on May 13, 2025 – "IM NOT SEEKING ATTENTION!!! THIS SHIT HAPPENED AND IM TIRED OF FIGHTING… YES IT HURTS BUT IM TIRED OF NIGHTMARES AND DRS APPTS AND PSYCH VISITS ONLY TO HAVE MEDICINE INCREASED!!!"

f.  At approximately 10:35 AM on May 13, 2025 – "Big John I'm Foming to Shoot Ur Shit Up Too On Missorui Avenue U Exposed Me To Crack In My Ass Known Ass A Butt Bump!!! You was a Killer and I was Scared of U but I'm Not No More and Lil Mike Cripple Ass Bet Not Be There Too!!!"

At approximately 5:59 PM on May 12, 2025, the Defendant posted a status update which included a screenshot of what appeared to be the Defendant's phone call history which included two missed phone calls from the Illinois State Police. Multiple attempts to contact the Defendant were made by investigators for the Illinois State Police and the Federal Bureau of Investigation. On several occasions, law enforcement officers were able to reach the defendant, but he refused to cooperate with or meet with law enforcement.

Parties agree that the government could prove that on May 13, 2025, at 10:35 a.m. the Defendant drove by a church in North St. Louis, Missouri and used a firearm to shoot at the church. The church called the St. Louis Metropolitan Police and reported the crime. St. Louis Police seized shell casings from this shooting that were later turned over to the FBI. The Defendant posted this on Facebook after the shooting: "Rxxx Pxxxx Just Shot a Window Out IN your Church It Felt Fucking Gud."

On May 14, 2025, an interview was conducted by the FBI with the victim, D.K. D.K. was aware of the threats made by the defendant. At the time the threats were made on May 12, 2025,

D.K. was at work in Creve Coeur, Missouri. D.K. reported that one of the defendant's posts had been a selfie of the defendant outside of D.K.'s previous employment in St. Louis City, Missouri, in which the defendant had said he was going to kill D.K. D.K. told law enforcement he was afraid of the Defendant and would be seeking an order of protection against the Defendant.

Victim "L.S."

The Defendant had made threats against L.S. on Facebook on or about May 12-13, 2025, the same timeframe that defendant was making the aforementioned threats on Facebook. The following threat was posted by the Defendant on May 13, 2025:

"Dr. Lxxxx PunkAass Sxxxxx IM COMING FOR YOUR MANIPULATING PUNK ASS TOO!!! YOU REMEBER THE RED AVENGER AND THE U OF I SHIT AND THE HOTEL IN FAIRVIEW HEIGHTS ON LINCOLN TRAIL AND THE SOAP U ATTEMPTED TO USE FOR LUBRICANT U OVER EDUCATED NO GOOD ASS NIGGA EVERYBODY NOW U GAY BUT U!!! YOUR SHIT STANK TOO WITH YOUR LIL DIRTY DICK HAVING ASS··· I LIVE RIGHT ACROSS THE STREET FROM UR LINE BROTHER HE CANT SAVE U FROM THIS ASS WHOOPING IM HEADED TO GIVE U TOO!!!U NAME BRAND LABEL TIGHT BABYGAP WEARING ASS CLOTHES HAVING ASS Class President Real Estate Broker Bitch Ass··· They TALK ABOUT U TOO!!! U JUST THINK U SO FUCKING GRAND HIDING BEHIND ALL THAT FAKE ASS LUXURY @highlight"

On May 16, 2025, the Defendant was charged by way of criminal complaint, and an arrest warrant was issued that same date. Investigators were actively attempting to arrest the Defendant.

The parties agree that the government could prove that on  May 17, 2025, at approximately 4:38 p.m., the Defendant drove up to victim L.S.'s residence located in East Saint Louis, Illinois, and fired a 9mm pistol at L.S.'s residence approximately five times. The Defendant fired the weapon out of the window of his white van. L.S. said he was next to a window when Defendant began firing at the house, and L.S. identified Defendant as the driver/shooter. Moreover, a security video at L.S.'s residence depicted a white van pulling up to

7

the home and shooting five times at the residence. The driver/shooter was wearing a bright orange sweatshirt, similar to the same attire Defendant was wearing on May 12, 2025, during his Facebook Live videos. The van in the video also matched the description of a white Nissan Van, the keys to which Defendant was in possession of when he was arrested on May 17, 2025. Finally, a precision location ping of Defendant's cell phone at approximately 4:40 p.m. placed him near the shooting in Illinois. Illinois State Police collected shell casings from this shooting and processed them at their lab.

On May 18, 2025, the Defendant walked into a Springfield, Illinois hospital at midnight and announced he was suicidal. Police were called and learned he was wanted by the FBI. FBI located his white van near the hospital and towed it. The van contained his cell phone, as well as, 3 shell casings, but not the firearm. Illinois State Police analyzed the shell casings and determined that they were all 9mm Luger fired cartridge cases and they matched the shell casings from the afroementioned shootings. The Defendant had driven from Missouri to Illinois with the firearm and ammunition to commit a felony, to wit: the discharge of a firearm into a home in Illinois.

Lastly, the defendant used the Internet to post the threats on Facebook. The Internet is a facility of interstate or foreign commerce. Defendant intended to engage in this course of conduct and he did so utilizing an electronic communication service.

## 5. **STATUTORY PENALTIES:**

As to Counts I and II, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not

more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

As to Count III, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

The counts can be run consecutively or concurrently.

### 6.  U.S. SENTENCING GUIDELINES (2024 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a.    Chapter 2 Offense Conduct:**

**(1)    Count One: Interstate Threat**

a.    **Base Offense Level:**  The parties agree that the base offense level is **12**, as found in Section 2A6.1.

b.    **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristic applies:

i. **6 levels** should be added because the offense involved any conduct evidencing an intent to carry out such threat pursuant to section 2A6.1(b)(1);

ii. **2 levels** should be added because the offense involved more than two threats pursuant to section 2A6.1(b)(2).

9

(2)    **Count Two: Interstate Threat**

    a.    **Base Offense Level:**  The parties agree that the base offense level is **12**, as found in Section 2A6.1.

    b.    **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristic applies:

        i. **6 levels** should be added because the offense involved any conduct evidencing an intent to carry out such threat pursuant to section 2A6.1(b)(1);

        ii. **2 levels** should be added because the offense involved more than two threats pursuant to section 2A6.1(b)(2).

**Count Three: Interstate Transportation of a Weapon or Ammunition to Commit a Felony**

    a.    **Base Offense Level:**  The parties agree that the base offense level is **12**, as found in Section 2K2.1(a)(7).

    b.    **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristic applies:

        i. the offense level should be increased to **level 18** because the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense pursuant to section 2K2.1(b)(6).

**b. Chapter 3 Adjustments:**

(1)  **Acceptance of Responsibility:** The parties agree that **3** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2)  **Other Adjustments:**  The government maintains that under Chapter Two, Part A counts are not grouped pursuant to Section 3D1.2. Under Section 3D1.4, **3 units** are added to the highest offense level – which is Count 1, because it is an Offense **Level 20** (which counts as one Unit), Count 2 is the same offense level (which adds 1 additional Unit) and Count 3 (also adds one additional Unit) as it only 2 units less serious than Count One. That leads to a total offense **level 20** after acceptance is accounted for in chapter 3. The defense contests that this adjustment applies.

**c.  Other Adjustment(s)/Disputed Adjustments:**  None.

**d.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is either **20 or 17**.

**e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

12

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of

13

the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such

14

items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial

15

will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

16

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

11/6/25
_____
Date

COLLEEN LANG
Assistant United States Attorney

11/6/25
_____
Date

DAMEON CHRISTIAN
Defendant

11/6/23
_____
Date

JULIE CLARK
Attorney for Defendant

17